UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL DAVID JOHNSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>J.A. BEARD, et al.,<br><br>　　　　　Defendants. | No. 2:15-cv-1313 KJN P<br><br><br>ORDER |

I. Introduction

　　　Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

　　　Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

　　　Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly

payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

II. Screening

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what

2

the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (<u>quoting</u> <u>Bell Atlantic</u>, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, <u>Erickson</u>, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds</u>, <u>Davis v. Scherer</u>, 468 U.S. 183 (1984).

III. <u>Factual Allegations</u>

Plaintiff alleges that the drinking water which was provided to him during his stays at the High Desert State Prison ("HDSP") from 2000 to 2005, the California State Prison at Solano ("CSP-Sol") from 2005 to 2010, and Deuel Vocational Institute ("DVI") from 2010-2014, had levels of arsenic which exceeded the drinking water standard set by the Environmental Protection Agency ("EPA"). (ECF No. 1 at 9, 11, 14.) Plaintiff alleges that arsenic causes cancer in high concentrations and is linked to skin damage and circulatory problems. (ECF No. 1 at 9.) Plaintiff then alleges that "some people who drink water containing arsenic in excess of the maximum contaminant level, herein the MCL, over many years may experience skin damage or circulatory system problems, and may have an increased risk to getting cancer." (<u>Id.</u>) No further allegations are made about the actual amount of arsenic in the water, the effects of that amount, the cause of the arsenic being present, or if and when any particular official discovered or even should have discovered the presence of arsenic.

Plaintiff also alleges that he had medical problems including skin conditions on his genital area, urination problems, and prostate conditions which first occurred in September of 2000 and were documented on September 19, 2000, less than a month after his arrival at HDSP on August 24, 2000. (<u>Id.</u> at 9-10.) Plaintiff then recites at least a portion of his interactions with the medical staff over the next four years, and asserts that the various doctors "failed to medically treat the Plaintiff." (<u>Id.</u> at 10-11.) The only failures by the medical staff cited by plaintiff in support of this claim are: plaintiff had an appointment cancelled in late 2001 and was not able to see a doctor for two months; defendant Rohlfing "failed to document the penis and prostate tests," defendant Kreitler "failed to diagnose the Plaintiff's symptoms…." (<u>Id.</u>) However, plaintiff does

3

1 | not allege what actions the doctors should have taken.

2 | After being transferred to CSP Solano, on August 11, 2005, plaintiff alleges that he informed defendant Naku of his symptoms, and claims that several tests were run between August of 2005, and February 2, 2006. (Id. at 11-12.) Plaintiff does not allege that defendants "failed to medically treat" him during this initial sixth month period.

Plaintiff does allege that various defendants "failed to medically treat him" from February 2, 2006, to May 27, 2009. (Id. at 12-13). Plaintiff alleges that he put in call slips for medical treatment on February 13, 2006, September 14, 2007, and June 30, 2008. (Id.) However, plaintiff does not allege any specific failures from any medical personnel during this time or identify any actions which he believes should have been taken. (Id.)

Plaintiff alleges that on June 17, 2009, he was seen by Crammer, a Physician's Assistant ("PA") who "became very upset" on seeing plaintiff and made the following statement:

> You mean to tell me that you aren't dead? From what I am reading in your file here in front of me, you should have been dead. Looks like your previous doctors were treating you like a guinea pig, and I do advise you to file a lawsuit for failure to diagnose you and for failure to treat you, and if you need me to be a witness, I will do so.

(Id. at 13.) However, plaintiff does not allege what specific failures P.A. Crammer was responding to, by which doctors, or what the proper course of conduct should have been.

Plaintiff alleges that in August of 2009 he discovered blood in his bowel movement and that the presence of blood in his stool was confirmed by P.A. Crammer. (Id. at 13-14.)

Plaintiff does not allege when he was transferred to DVI, but he alleges that he was housed at DVI at least by June 28, 2010, when he again alleges that the medical defendants at DVI "failed to medically treat" him from that date until June 21, 2013. (Id. at 14.) However, plaintiff again fails to allege any specific failures or errors by any of the medical doctors. Indeed, the only facts provided by plaintiff are that these defendant doctors ran a number of tests in 2013 ultimately leading to plaintiff being diagnosed with an induration of his prostate and prostate cancer. (Id. at 14-15.)

Finally, plaintiff alleges that the prison official defendants "deliberately, maliciously, [and] purposely" allowed the prison water to be contaminated with arsenic and nitrates, thereby

4

causing plaintiff's medical conditions including his cancer. (Id. at 15.) Plaintiff also alleges that the medical defendants failed to treat his medical needs and thereby caused his cancer. (Id. at 15-16.) However, he alleges no facts in support of these conclusory statements.

IV. Analysis

There are two claims asserted here: the claim against the prison officials regarding alleged arsenic in the water and the claim against various prison doctors for denial of medical treatment.

### A. Conditions of Confinement

The Eighth Amendment provides that "cruel and unusual punishment [shall not be] inflicted." U.S. Const. Amend. VIII. An Eighth Amendment claim alleging a failure to provide clean or safe water is a conditions of confinement claim. Reed v. Harrington, No. 1:11-CV-01883-AWI, 2013 WL 1627622, at *3 (E.D. Cal. Apr. 15, 2013) (analyzing claim that prison water had levels of arsenic higher than EPA standards under a conditions of confinement standard); Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001) ("Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate."); See also Helling v. McKinney, 509 U.S. 25, 35-37 (1993) (using "demonstrably unsafe drinking water" as a hypothetical example of a potential conditions of confinement claim).

"An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and the other subjective." Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995), cert. denied, 514 U.S. 1065 (1995). The objective requirement is met if the prison official's acts or omissions deprived a prisoner of "the minimal civilized measure of life's necessities." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). To satisfy the subjective prong, which deals with the defendant's state of mind, a plaintiff must show deliberate indifference. Id.

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer, 511 U.S. at 837. Thus, a defendant is liable if he knows that plaintiff

5

faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842.

Here, plaintiff's claim fails at both prongs. The Supreme Court has made clear that: "With respect to the objective factor, [plaintiff] must show that he himself is being exposed to unreasonably high levels of [the condition objected to by plaintiff]." Helling, 509 U.S. at 35. Furthermore, mere scientific or statistical inquiry into the potential seriousness or likelihood of the condition is insufficient. The Supreme Court has stated the objective inquiry:

> requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

Id. at 36.

While the court accepts as true plaintiff's allegation that the arsenic levels exceeded EPA standards, this allegation is far from sufficient. Plaintiff has not alleged the actual levels of arsenic to which he was exposed or the effects of those levels. Critically, plaintiff has not alleged facts about how today's society responds to those levels of arsenic. For example, if the local community was not specially treating the water, despite knowing the arsenic levels exceeded EPA standards, it is unlikely that plaintiff can demonstrate a violation. "The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." Carroll, 255 F.3d at 472. Therefore, the objective prong of plaintiff's conditions of confinement claim fails.

As to the second prong of the conditions of confinement claim, plaintiff's bald assertions that defendants "deliberately, maliciously, and purposely" allowed the water to become contaminated are insufficient to meet the pleading standard. (ECF No. 1 at 15.) Plaintiff has not alleged when or how each defendant learned that there was arsenic in the water, much less how each defendant was on actual, subjective notice that the levels of arsenic were high enough to

////

////

constitute an objectively unreasonable condition of confinement.[1]  The critical inquiry in stating a deliberate indifference claim is defendants' state of mind, and without these facts, the court cannot draw reasonable inferences that defendants' conduct was even erroneous or negligent, much less that it was deliberately indifferent.  Therefore, plaintiff's conditions of confinement claim fails at the second prong as well.

B.  Medical

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Jett, 439 F.3d at 1096.  Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided.  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).

////

---

[1] It appears that several of plaintiff's claims may be barred by the statute of limitation.  California law determines the applicable statute of limitations in this § 1983 action.  Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999).  Until December 31, 2002, the applicable state limitations period was one year.  See Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (citing Cal. Civ. Proc.Code § 340(3) (West Supp. 2002); see also Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).  Effective January 1, 2003, the applicable California statute of limitations was extended to two years.  See Jones, 393 F.3d at 927 (citing Cal. Civ. Proc. Code § 335.1).  However, the new statute of limitations period does not apply retroactively.  Maldonado, 370 F.3d at 955.  California law also tolls for two years the limitations period for inmates "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life."  Cal. Civ. Proc. Code § 352.1.  The Ninth Circuit has held that a limitations period may be tolled while a claimant pursues an administrative remedy.  Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131 (9th Cir. 2001.)

Federal law governs when plaintiff's § 1983 claims accrued and when the limitations period begins to run.  Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998).  A claim under 42 U.S.C. § 1983 accrues when the "wrongful act or omission results in damages."  Wallace v. Kato, 549 U.S. 384, 388, 391 (2007); Hardin v. Staub, 490 U.S. 536, 543-44 (1989) (federal law governs when a § 1983 cause of action accrues).  In other words, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action."  Maldonado, 370 F.3d at 954-55.  However, if plaintiff and defendants lacked knowledge of the harm, for example, if no tests of the water were available during the relevant time, plaintiff's deliberate indifference claim would fail as a matter of law.

A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06.) A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a[§ ]1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); see also Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (doctor's awareness of need for treatment followed by his unnecessary delay in implementing the prescribed treatment sufficient to plead deliberate indifference); see also Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012) overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (decision of non-treating, non-specialist physicians to repeatedly deny recommended surgical treatment may be medically unacceptable under all the circumstances.)

////

As far as plaintiff's claim for denial of medical treatment, plaintiff has not alleged that defendants knew what his condition was, knew that they were denying him treatment for that condition, much less that they knew that their denial would result in serious medical harm to the plaintiff. While P.A. Crammer's statements indicate that it was his opinion that some of plaintiff's medical treatment was wrongful, a difference of opinion, even between medical professionals does not suffice to state a claim for deliberate indifference. Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242.

Furthermore, P.A. Crammer's statements[2] or any of plaintiff's other allegations do not provide sufficient detail as to any particular defendant to show that any specific defendant had the requisite state of mind. Again, deliberate indifference requires that plaintiff "show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." Jackson, 90 F.3d at 332. No such facts have been alleged here, and therefore plaintiff has failed to state a claim for denial of medical treatment.

Plaintiff's complaint contains a large of amount of factual allegations, in the sense that he is quite thorough in naming and renaming each defendant and repeating claims against defendants. However, plaintiff does not allege relevant facts regarding specific conduct or events which would allow the court to draw the necessary inferences to find his claims plausible. Without these relevant facts, plaintiff's claims are insufficient.

C. Supervisorial Liability

While the lack of relevant factual allegations makes it somewhat difficult to discern, plaintiff also appears to be attempting to state claims under theories of respondeat superior.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

---

[2] Plaintiff's claims against P.A. Crammer and Dr. Thuddy, arising from plaintiff's treatment in 2009 while housed at the California Training Facility - Soledad, are proceeding in the United States District Court for the Northern District of California. Johnson v. Thuddy, No. 3:14-cv-04958-JST (N.D. Cal.).

9

> Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658, 659 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Although supervisory government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior, Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), they may be individually liable under Section 1983 if there exists "either (1) [the supervisor's] personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).  The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be established in a number of ways, including by demonstrating that a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates was a cause of plaintiff's injury.  Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).  A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim -- and, more specifically, on the state of mind required by the particular claim -- not on a generally applicable concept of supervisory liability.  Oregon State University Student Alliance v. Ray, 699 F.3d 1053, 1071 (9th Cir. 2012).

////

10

V. <u>Leave to Amend</u>

Because the plaintiff has not alleged sufficient facts to allow the court to conclude that his claims are plausible, his complaint must be dismissed. The court will, however, grant leave to file an amended complaint.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. <u>Rizzo,</u> 423 U.S. at 371. Also, the complaint must allege in specific terms how each named defendant is involved. <u>Id.</u> There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. <u>Id.</u>; <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson</u>, 588 F.2d at 743. Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. <u>See</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Finally, the federal rules contemplate brevity. <u>See</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)."); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. <u>See</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8. The court (and defendants) should be able to read and understand plaintiff's pleading within minutes.

McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996). A long, rambling pleading, including many defendants with unexplained, tenuous or implausible connection to the alleged constitutional injury or joining a series of unrelated claims against many defendants very likely will result in delaying the review required by 28 U.S.C. § 1915, and an order dismissing plaintiff's action pursuant to Rule 41 of the Federal Rules of civil Procedure for violation of these instructions.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's complaint is dismissed.

4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

   a. The completed Notice of Amendment; and

   b. An original and one copy of the Amended Complaint.

Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint." Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

Dated: April 21, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

john1313.14

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   PAUL DAVID JOHNSON,                    No. 2:15-cv-1313 KJN P
12          Plaintiff,
13       v.                                 NOTICE OF AMENDMENT
14   J.A. BEARD, et al.,
15          Defendants.
16
17       Plaintiff hereby submits the following document in compliance with the court's order
18   filed_____.
19          _____        Amended Complaint
     DATED:
20
21                                              _____
22                                              Plaintiff