| | |
|---|---|
| PAUL DAVID JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>J. A. BEARD, et al.,<br><br>Defendant. | No. 2:15-cv-1313 TLN KJN P<br><br>ORDER |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. Pursuant to the court's order filed May 14, 2019, this action now proceeds on plaintiff's second amended complaint.[1]

I. Screening Standards

As plaintiff was previously informed, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state

////

---

[1] Plaintiff's Eighth Amendment medical claims against the defendants were dismissed without prejudice to filing an action in this court. Johnson v. Thuddy, No. 3:14-cv-04958-JST (N.D. Cal. Apr. 17, 2015); See also ECF No. 1 at 18-22; ECF No. 19 at 2.

1

a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A district court must construe a pro se pleading "liberally" to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Iqbal, 556 U.S. at 678 (citations and quotation marks omitted). Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations, and are not entitled to the assumption of truth. Id. at 1950.

Exhibits appended to a complaint are a part thereof for all purposes. See Fed. R. Civ. P. 10(c); see Wilhelm v. Rotman, 680 F.3d 1113, 1116 n.1 (9th Cir. 2012) (exhibits attached to the complaint may be considered to decide whether dismissal is proper); Iqbal, 556 U.S. at 678 (2009) (conclusory allegations not supported by factual allegations do not state a plausible claim).

II. Plaintiff's Second Amended Complaint

Plaintiff again alleges that defendant doctors were deliberately indifferent to plaintiff's serious medical needs by delaying the diagnosis and treatment of his prostate cancer. Plaintiff alleges that he continues to suffer penile tenderness, bleeding ulcers, bloody bowels and urine, as

2

well as urination problems. Plaintiff claims the defendants misdiagnosed plaintiff in 2005, 2006, and through each PSA test, and denied him the correct treatment in a timely manner. (ECF No. 41 at 6.) Plaintiff avers that he has been permanently damaged from "reproduction of life." (ECF No. 41 at 9.) Plaintiff did not set forth his requested relief. (ECF No. 41.)

III. Eighth Amendment Standards

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support

a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

Rather, deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood, 900 F.2d at 1335; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett, 439 F.3d at 1096; see also McGuckin, 974 F.2d at 1060. In addition, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a case. Id.

IV. Discussion

    A. Defendants at California State Prison, Solano

Initially, the court notes that plaintiff failed to comply with this court's prior screening order (ECF No. 19), and again included claims the district court found are barred by the statute of limitations (ECF No. 25). Specifically, plaintiff included incidents from 2005 and 2007 as to defendants Dr. Chen, Dr. Mahmoud, and Dr. Naku, at California State Prison, Solano ("CSP-

4

SOL"), once again provided medical records from 2005 to 2007 (ECF No. 42 at 1-20), and failed to demonstrate that his allegations as to Dr. Collinsworth were based on incidents after 2010. But the district court previously found that plaintiff's Eighth Amendment medical claims against defendants Dr. Naku, Dr. Mahmoud, Dr. Chen, and Dr. Collinsworth, arising from medical care provided at CSP-SOL *prior* to December 13, 2010, are barred by the statute of limitations. (ECF No. 25 at 2.) Therefore, plaintiff's claims based on incidents from 2005 and 2007 are time-barred under law of the case doctrine. See Richardson v. United States, 841 F.2d 993, 996 (9th Cir.), amended 860 F.2d 357 (9th Cir. 1988) (under law of the case doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.").

As previously explained, plaintiff was also housed at CSP-SOL from September through December of 2012.[2] Plaintiff was expressly granted leave to amend as to defendants employed at CSP-SOL provided plaintiff could allege facts demonstrating that such defendants were deliberately indifferent to plaintiff's serious medical needs while he was housed at CSP-SOL *after December 13, 2010*. (ECF No. 19 at 30-31 (emphasis added).) Based on the allegations as to defendants Dr. Chen, Dr. Mahmoud, and Dr. Naku, it appears that plaintiff was unable to allege facts concerning their alleged deliberate indifference after December 13, 2010. Thus, plaintiff is not granted leave to amend as to defendants Dr. Chen, Dr. Mahmoud, and Dr. Naku because plaintiff has amended multiple times and has been unable to state timely and cognizable Eighth Amendment claims against them.

As for Dr. Collinsworth, because plaintiff failed to include any dates in his allegations, the court is unable to determine whether Dr. Collinsworth failed to refer plaintiff to a urologist in 2012 while plaintiff was housed at CSP-SOL.[3] Accordingly, plaintiff is granted leave to amend

---

[2] "Plaintiff arrived at CSP-SOL on July 6, 2005, where he was housed until 2009, and again from September through December of 2012, when he was transferred to DVI." (ECF No. 19 at 25, citing ECF No. 15 at 7, 84.) Plaintiff included Dr. Chen and Dr. Collinsworth in the Northern District complaint.

[3] The prior medical record of Dr. Collinsworth does not assist because it is dated December 30, 2008. (ECF No. 15 at 118.)

5

to include specific allegations, if he can, as to Dr. Collinsworth's alleged deliberate indifference to plaintiff's serious medical needs while plaintiff was housed at CSP-SOL *in 2012*. Plaintiff is reminded that a doctor cannot be found deliberately indifferent for failing to treat a condition of which he is unaware. (ECF No. 19 at 34.)

B. <u>Defendants at Deuel Vocational Institution</u>

In his second amended complaint, plaintiff again includes allegations as to Dr. Kim, Dr. Win, and Dr. Zheng, all employed at Deuel Vocational Institution ("DVI"). Plaintiff was transferred to and housed at DVI from late 2012 to 2014, and transferred to San Quentin on February 27, 2014. (ECF No. 19 at 31.) The undersigned sets forth and screens plaintiff's allegations as to each below.

<u>Dr. Kim</u>

On July 12, 2013, Dr. Kim (and Dr. Win) transferred plaintiff to the Doctor's Hospital in Manteca for a biopsy. (ECF No. 41 at 5.) On July 9, 2013, plaintiff was removed for medical treatment, and on July 13, 2013, plaintiff was transferred to Doctor's Hospital for a prostate biopsy, "ordered by Dr. Kim (CMO)." (ECF No. 41 at 10.) On July 16, 2013, a pathologist reported plaintiff had prostate cancer. (ECF Nos. 15 at 20; 41 at 10.) On November 25, 2013, plaintiff was told his PSA was 2.6. (ECF Nos. 15 at 20; 41 at 10.) On December 26, 2013, Dr. Kim signed a form authorizing plaintiff's transfer "to urology;" plaintiff was transferred to Doctor's Hospital on December 30, 2013. (<u>Id.</u>) On December 30, 2013, nonparty Dr. Hsieh, an outside urologist ordered by Dr. Kim, performed a digital exam, yet plaintiff was not told of the "prognosis of the exam."[4] (ECF No. 41 at 4.) From July 12, 2013, through February 10, 2014, plaintiff was seen by an outside urologist and nonparty Dr. Gershbein, whose rectal exam revealed plaintiff "had a very hard nodular right lobe, suggesting extensive local disease.[5] (ECF

---

[4] Plaintiff claims that "any of the above defendants" did not inform plaintiff of the prognosis. However, by 2013, plaintiff had been transferred to DVI; therefore, no defendant at CSP-SOL was still involved in plaintiff's medical treatment.

[5] After referencing Dr. Gershbein's exam, plaintiff states that according to an outside radiology consultant Dr. Miyawaki, plaintiff was told he had "intermediate risk disease," but provided no date as to when he received such information. (ECF No. 41 at 9.) Prior medical records

6

No. 41 at 9.)

Plaintiff alleges that defendants had the opportunity to review plaintiff's medical records and make medical determinations based on the severity of plaintiff's health and prioritize his medical care, yet failed to acknowledge the seriousness of plaintiff's medical symptoms and the PSA test, therefore misdiagnosing and delaying plaintiff's treatment. (ECF No. 41 at 10.) Plaintiff argues that each defendant delayed providing appropriate medical treatment despite plaintiff's complaints of severe stomach pains, bleeding ulcers, blood in urine, and tenderness in his penis. (ECF No. 41 at 11.)

Despite the court's prior detailed screening order, plaintiff again fails to provide specific facts demonstrating that Dr. Kim acted with a culpable state of mind. Rather, plaintiff identifies positive steps Dr. Kim took to provide plaintiff with medical care outside the prison. Plaintiff acknowledges that Dr. Kim was "CMO," which is the acronym for Chief Medical Officer, yet fails to set forth when or if Dr. Kim was responsible for plaintiff's ongoing medical care. Rather, prior medical records provided by plaintiff demonstrate that Dr. Kim approved Dr. Win's requests and signed orders for plaintiff's transport to outside consults, as plaintiff's current allegations confirm. (See ECF No. 19 at 33; 36.) Plaintiff fails to allege facts demonstrating that Dr. Kim was plaintiff's primary care physician or responsible for providing medical treatment. Rather, the prior medical records provided by plaintiff suggest Dr. Kim's role was supervisorial, and only approved requests submitted by Dr. Win. (Id.) Importantly, plaintiff alleges no facts demonstrating Dr. Kim was responsible for delays in plaintiff's care, or wrongfully denied any of the care recommended by plaintiff's primary care physicians. There was a delay from July, when the cancer was diagnosed, to December, when plaintiff was transferred to an outside urologist, but plaintiff alleges no facts demonstrating that Dr. Kim was responsible for that delay.

////

demonstrate that he saw Dr. Miyawaki on September 3, 2014, for a comprehensive radiology oncology consult. (ECF No. 19 at 36.) Dr. Miyawaki's "impressions were 'clinical stage T2cN0M0 Gleason score 4+3=7 adenocarcinoma of the prostate with a PSA of 3.3. He was diagnosed in 2013 and has been on active surveillance.'" (ECF Nos. 19 at 36; 15 at 197.)

7

Dr. Win[6]

Plaintiff alleges that Dr. Win knew of plaintiff's many medical issues, including penile pain, bleeding ulcers, and urination problems which "increased plaintiff's prostate," yet did nothing to relieve plaintiff's suffering, which lead the cancer to progress. (ECF No. 41 at 5.) On June 21, 2013, Dr. Win had plaintiff's PSA tested at CMF. On July 12, 2013, Dr. Win (and Dr. Kim) had plaintiff transferred to Doctor's Hospital for a biopsy. Plaintiff was diagnosed with prostate cancer on July 16, 2013. Plaintiff claims he was unaware of his injuries until after the 2013 PSA test when Dr. Win ordered the blood test performed on July 12, 2013. (ECF No. 41 at 6.)

Again, plaintiff fails to identify Dr. Win's role, and fails to specifically identify the periods of delay for which he alleges Dr. Win was responsible.[7] For example, the specific facts alleged do not suggest undue delay; plaintiff was transferred for a biopsy about three weeks after his PSA was tested. Plaintiff does not indicate the first time he saw Dr. Win, and fails to identify any particular delay from when he transferred to DVI and when Dr. Win had plaintiff's PSA tested. Even if the court considers the prior medical record reflecting that Dr. Win ordered an occult blood test on November 2, 2012, reviewed it on November 30, 2012 (ECF No. 15 at 158), such test, without more, fails to demonstrate deliberate indifference or delay in plaintiff's care for his prostate cancer. Moreover, plaintiff fails to articulate specific facts demonstrating Dr. Win acted or failed to act with a culpable state of mind.

Dr. Zheng

On June 12, 2013, Dr. Zheng performed a rectal exam on plaintiff and discovered an "induration in the right lobe of [plaintiff's] prostate measure[ing] . . . 30 g." (ECF No. 41 at 6.) Plaintiff contends Dr. Zheng failed to treat plaintiff for his penile pain, bleeding ulcer, and ongoing urination problems, and "neglect[ed] to assess plaintiff's serious medical needs which

---

[6] Plaintiff did not include Dr. Win's name as a defendant in the caption of the second amended complaint. Plaintiff is advised that he must list every individual named as a defendant both in the caption and in the body of any amended complaint.

[7] Indeed, the medical records suggest that other doctors were responsible for plaintiff's primary care when he transferred to DVI. (ECF No. 15 at 172-75.)

8

lead to the deterioration, and the progress of cancer in plaintiff's prostate." (Id.) Plaintiff claims that "defendants" ignored the severity of plaintiff's "medical emergency" and "failed to treat and properly diagnose [his] symptoms,' allowing his "untreated conditions to develop into . . . cancer." (ECF No. 41 at 6.) But, again, plaintiff fails to include specific facts identifying the period of time he contends Dr. Zheng delayed plaintiff's treatment, or to demonstrate Dr. Zheng acted, or failed to act, with a culpable state of mind.

Conclusion:  DVI Defendants

Accordingly, and in an abundance of caution, plaintiff is granted one final opportunity to file a third amended complaint that alleges facts demonstrating that, while plaintiff was housed at DVI from late 2012, Dr. Kim, Dr. Win, or Dr. Zheng were deliberately indifferent to plaintiff's serious medical needs.  Failure to comply with this order, as well as the court's prior screening order (ECF No. 20), will result in a recommendation that this action be dismissed.  Fed. R. Civ. P. 41(b).

### C. Plaintiff's Overall Claims

The gravamen of plaintiff's allegations are unclear because he attributes general claims as to "defendants," rather than articulating alleged wrongful acts or omissions by each doctor, and includes legal citations and arguments that do not provide the necessary facts to determine whether plaintiff is able to state a cognizable Eighth Amendment claim based on the treatment provided, lack of treatment provided, or an alleged delay in treatment.  Iqbal, 556 U.S. at 678 (2009) (conclusory allegations not supported by factual allegations do not state a plausible claim). Plaintiff generally emphasizes delay, and, as set forth above, legal authorities support a cause of action based on delay, but plaintiff must provide specific facts as to each named defendant that meet both elements of an Eighth Amendment claim based on delay.  Plaintiff presents a serious medical need based on his diagnosis of prostate cancer, but he must allege facts showing that each defendant was deliberately indifferent to plaintiff's serious medical need.  Plaintiff has failed to do so.  The fact a defendant could have discovered plaintiff's medical complaints by reviewing his medical file does not demonstrate the defendant's subjective awareness.

////

Also, while not entirely clear, it appears plaintiff is claiming that since 2000 he has endured bleeding ulcers, bloody bowels and urine, constant urination problems, and penile pain or tenderness at the head of his penis, and contends that because "defendants" ignored or failed to treat such symptoms, plaintiff developed prostate cancer. But plaintiff fails to allege sufficient facts to state a claim that is plausible based on such theory. Indeed, it is not plausible that bleeding ulcers led to plaintiff's prostate cancer. In addition, as previously noted, plaintiff had multiple medical issues, and while housed at DVI was diagnosed with an overactive bladder and benign prostatic hypertrophy ("BPH"), which could be treated with medication. (ECF No. 15 at 188.) Nonparty Dr. Bretan noted on June 12, 2013, that plaintiff's "symptoms have quiescent" with medication. (Id.)

Moreover, plaintiff has provided medical records demonstrating that while housed at DVI he has received myriad lab tests, medication, and outside consults with specialists. (ECF No. 19 at 34-36 (record citations omitted).) Where plaintiff contends that different medical treatment should have been provided, he "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson, 90 F.3d at 332 (citation omitted).

Finally, as plaintiff was previously informed, a medical misdiagnosis, while very serious, constitutes negligence, not deliberate indifference, and therefore fails to state an Eighth Amendment violation. Plaintiff claims the defendants misdiagnosed plaintiff in 2005, 2006, and through each PSA test. (ECF No. 41 at 6.) But as stated earlier, plaintiff's medical claims prior to 2010 are time-barred. Plaintiff's vague reference to "through each PSA test" is problematic because he fails to identify which PSA test should have prompted different treatment and by which doctor.[8] Such reference is also problematic in light of outside specialist Dr. Miyawaki's recommendation that plaintiff be treated with "continued active surveillance with PSA testing every 6 months. . . ." (ECF No. 15 at 197.) Plaintiff alleges no facts suggesting the actions of defendants Dr. Kim, Dr. Win or Dr. Zheng were medically unacceptable in terms of ordering PSA

---

[8] The records reflect plaintiff's PSA levels were 1.67 (2002), 1.2 (2006), 1.6 (2007), 1.8 (June 2013), 2.6 (November 2013), and 3.3 (September 2014). (ECF No. 15 at 62, 95, 102, 106, 200, 197.)

tests. In light of Dr. Miyawaki's recommendation, it is unlikely plaintiff can allege facts demonstrating that ordering PSA tests, standing alone, "was medically unacceptable under the circumstances." Jackson, 90 F.3d at 332.

Moreover, in September of 2014, Dr. Miyawaki expressly noted plaintiff had been on "active surveillance" since plaintiff was diagnosed in 2013. (ECF No. 15 at 197.)[9] Dr. Miyawaki reported that plaintiff had discussed surgical options with Dr. Gershbein. (Id.) Dr. Miyawaki discussed with plaintiff the potential benefits and risks of radiation therapy, as well as the "relative disadvantages of continued active surveillance versus definitive therapy with either surgery or radiation therapy." (Id.) Following this extensive consult, plaintiff chose active surveillance rather than surgery or radiation therapy. Given Dr. Miyawaki's report, absent facts not alleged here, it does not appear that plaintiff can state a cognizable claim based on a failure to provide medical care for his prostate cancer after he was diagnosed on July 16, 2013. See Varner v. Smith, 2015 WL 1530441, *10 (E.D. Mich. March 31, 2015) (facts adduced on summary judgment "merely presented a difference of medical opinion" as to the monitoring of Varner's prostate cancer).

VI. Leave to Amend

In light of the above, the second amended complaint must be dismissed. The court, however, grants plaintiff one final opportunity to cure noted defects to the extent he believes in good faith he can do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987), superseded on other grounds by statute as stated in Lopez, 203 F.3d at 1127. If plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i).

---

[9] Indeed, the court previously noted the difficulties in raising an Eighth Amendment challenge based on a delay in diagnosing prostate cancer due to the available treatment options (ECF No. 19 at 30 n.14), as well as the side effects of treatment options, both noted in exhibits provided by plaintiff. Treatment options include "watchful waiting, active surveillance, surgery, and radiation therapy." (ECF No. 15 at 206; 42 at 31.) "Harms of treatment include erectile dysfunction, urinary incontinence, bowel dysfunction, and a small risk for premature death." (ECF No. 15 at 206.) "There is no consensus regarding optimal treatment" for prostate cancer." (ECF No. 15 at 206 (source: U.S. Preventive Task Force, https://www.uspreventiveservicestaskforce.org).)

If plaintiff chooses to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 555). Plaintiff is not granted leave to add new claims or new defendants. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this screening order, as well as the prior screening order (ECF No. 19), and focus his efforts on curing the deficiencies set forth above.

If plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of plaintiff's constitutional rights, Iqbal, 556 U.S. at 676-677. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted). Plaintiff should state the name and/or title of the person who acted to violate his rights, his or her role in providing medical treatment, what they did or did not do to violate his rights, when or approximately when the action or inaction occurred, why that person knew plaintiff had a serious medical need, and what harm plaintiff suffered as a result of not having his medical need appropriately treated. Plaintiff should make sure to list all his named defendants both in the case caption and in the body of the amended complaint.

As set forth above, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 570).

Plaintiff is not required to include legal arguments or legal citations in any amended complaint. McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996) (affirming dismissal of § 1983 complaint for violation of Rule 8 after warning); see Crawford-El v. Britton, 523 U.S. 574, 597 (1998) (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in prisoner cases). Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations, and are not entitled to the assumption of truth. Iqbal, 566 U.S. at 678.

Plaintiff is reminded that on October 31, 2018, the district court found plaintiff's Eighth Amendment medical claims against defendants Dr. Naku, Dr. Mahmoud, Dr. Chen, and Dr. Collinsworth, arising from medical care provided at CSP-SOL *prior* to December 13, 2010, are barred by the statute of limitations. (ECF No. 25 at 2.) Further violation of such order may result in the dismissal of this action. Fed. R. Civ. P. 41(b). Thus, plaintiff shall not include any claims based on medical care provided prior to December 13, 2010, in any amended complaint.

Finally, an amended complaint replaces or supersedes the prior complaint, see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220. In other words, plaintiff cannot rely on prior pleadings to state a cognizable Eighth Amendment claim.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's second amended complaint is dismissed; and

2. Plaintiff is granted thirty days from the date of service of this order to file a third amended complaint that complies with the instant order, the March 20, 2018 and October 31, 2018 orders, the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the third amended complaint must bear the docket number assigned this case and must be labeled "Third Amended Complaint"; plaintiff must file an original and two copies of the third amended complaint.

Failure to file a third amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

Dated: July 12, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/john1313.14a