UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL JOHNSON, | No. 2:15cv1313 DJC KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| BEARD, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding pro se. In this action, plaintiff alleges defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. All defendants have been dismissed except for Dr. Naku. After Dr. Naku failed to appear, plaintiff obtained a clerk's entry of default under Rule 55(a) of the Federal Rules of Civil Procedure, and now moves for default judgment. As set forth below, it is recommended that the motion be denied.

Plaintiff's Operative Pleading

This action proceeds on plaintiff's third amended complaint. (ECF No. 54.) From July 6, 2005, through 2009, plaintiff was housed at California State Prison, Solano ("CSP-SOL"). Following housing at other prisons, plaintiff was again housed at CSP-SOL from September through December of 2012. (ECF No. 44 at 5 n.2.) Defendants Dr. Chen, Dr. Mahmoud, Dr. Naku, and Dr. Collinsworth provided medical care at CSP-SOL. Plaintiff alleges that each

1

defendant delayed plaintiff appropriate medical care after he presented with "severe stomach pains, bleeding bowels, blood in urine, and tenderness in penis." (ECF No. 54 at 2.) As to Dr. Naku, plaintiff alleges that Dr. Naku

> medically failed plaintiff even though [h]e was not the causation of plaintiff['s] medical illness, . . . he was the 'only' physician authorized by the state to whom Plaintiff could turn to. Plaintiff does not seek to attribute his initial symptoms to the Defendant. The serious medical injury alleged by Plaintiff is not the collections of symptoms that caused him to seek medical attention [in] the first place, but the progression of those symptoms into cancer that, by the time Plaintiff was diagnosed, had spread through out plaintiff['s] entire prostate without treatment and without Plaintiff's knowledge. . . . Dr. Naku ordered a PSA blood test on Plaintiff, however, Defendant Naku fail[ed] to obtain [a]n urology test from February 2, 2006 to February 13, 2007 . . . while plaintiff was housed at Solano (CSP) state prison. Dr. Naku failed the medical standards of delaying treatment to Plaintiff's serious medical needs.

(ECF No. 54 at 2-3.) Plaintiff did not receive a urology test for another two years and was not diagnosed with prostate cancer until July 16, 2013. (Id. at 5-6; see also ECF No. 106 at 6 (under the discovery rule, plaintiff's claim that a defendant's deliberate indifference resulted in plaintiff developing cancer and obtaining a late diagnosis accrued on July 16, 2013).)

Plaintiff provided copies of medical records concerning treatment by Dr. Naku in 2005. (ECF No. 54 at 26-28.) As relief, plaintiff seeks a declaration that the acts of defendants violated his rights under the Constitution and laws of the United States, and any additional relief as deemed just, proper and equitable. (ECF No. 54 at 8.)

Background

On December 11, 2019, the United States Marshal was directed to serve all process without prepayment of costs. On July 1, 2020, the Marshal filed a notice that service of process was executed on defendant Naku by personal service on June 30, 2020. (ECF No. 73.)

On August 25, 2020, Dr. Naku was ordered to show cause why his default should not be entered. (ECF No. 87.) On September 10, 2020, Dr. Naku wrote a letter to the clerk of the court which is not signed under penalty of perjury. (ECF No. 94.) Dr. Naku confirmed he was a physician and surgeon at CSP-Solano between 2004-08, leaving in April of 2008. He treated plaintiff twice: on August 25, 2005, and December 29, 2005, and because plaintiff had a normal

PSA and no symptoms of obstructive urinary symptoms, there was no indication for a urology referral. (ECF No. 94 at 2.) Dr. Naku denied he was deliberately indifferent to plaintiff's serious medical needs. (Id.)

On January 21, 2021, the undersigned found that Dr. Naku's response to the order to show cause suggested an intent to defend the action, discharged the order to show cause and granted Dr. Naku thirty days to file a responsive pleading. (ECF No. 110.) Dr. Naku's copy of the order was returned by the postal service, as were subsequent mailings, despite being mailed to his current address of record provided to the California Medical Board, License No. A81236.

On April 27, 2021, clerk's entry of default was entered as to defendant Dr. Binoye Naku. (ECF No. 138.)

On July 24, 2023, plaintiff filed a motion for entry of default judgment under Rule 55(a) of the Federal Rules of Civil Procedure and sought $1,300,827.60. (ECF No. 229.) On July 24, 2023, plaintiff also filed a motion for entry of default judgment under Rule 55(b) of the Federal Rules of Civil Procedure and sought $900,302.60. (ECF No. 230.)

Jurisdiction

This court has subject matter jurisdiction over plaintiff's Eighth Amendment claims brought under 28 U.S.C. § 1983. The record demonstrates that service of process on Dr. Naku was proper (ECF No. 73) and that the Court possesses personal jurisdiction over the defendant. See, e.g., In re Tuli v. Republic of Iraq, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

Default

Clerk's Default

To obtain a default judgment against a party, the Federal Rules of Civil Procedure require a two-step process. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the party seeking a default judgment must ask the court clerk to enter the default under Federal Rule of Civil Procedure 55(a). Id. As noted above, clerk's entry of default as to defendant Dr. Binoye Naku was entered on April 27, 2021.

Default Judgment

Is Sum Certain Appropriate?

Federal Rule of Civil Procedure 55(b)(1) provides that, where the plaintiff seeks "a sum certain or a sum that can be made certain by computation" and provides an affidavit showing the amount due, the clerk must enter judgment for that amount and costs against a defendant who has been defaulted. However, "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (C) investigate any other matter." Id. "[A] claim is not a sum certain unless no doubt remains as to the amount to which a plaintiff is entitled as a result of the defendant's default." Franchise Holding II, LLC v. Huntington Rests. Group, Inc., 375 F.3d 922, 928-29 (9th Cir. 2004).

Here, plaintiff contends that defendant Dr. Naku was deliberately indifferent to plaintiff's serious medical needs and requests a sum certain. However, the amount of compensation due for such an injury are subject to considerable doubt and thus the damages sought herein are not of a "sum certain" under Federal Rule of Civil Procedure 55(b)(1). Thus, plaintiff's motion for default judgment based on his request for a sum certain should be denied.

Is Default Judgment Appropriate?

Therefore, the court must determine whether plaintiff is entitled to a default judgment against defendant Dr. Naku. Fed. R. Civ. P. 55(b)(2). "A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment is within the district court's discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising such discretion, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to

4

excusable neglect, and (7) the strong policy underlying the Federal
Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.  Default judgments are "ordinarily disfavored."  Id. at 1472.  "Of all the Eitel factors, courts often consider the second and third factors to be the most important." Vietnam Reform Party v. Viet Tan - Vietnam Reform Party, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted).

Generally, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  That said, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted)); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").

The district court is not required to make detailed findings of fact.  Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990).

If proximate cause is properly alleged in the complaint, it is admitted upon default." Elektra Entm't Group, Inc. v. Bryant, 2004 WL 783123, at *2 (C.D. Cal. 2004) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Reality Corp., 973 F.2d 155, 159 (2d Cir. 1992)).  Injury is admitted upon default, but the plaintiff "still must prove that the compensation sought relates to the damages that naturally flow from the injuries pled."  Wu v. Ip, 1996 WL 428342, at *1 (N.D. Cal. 1996) (citing Greyhound, 973 F.2d at 159).  Thus, a party's default conclusively establishes that party's liability on sufficiently pleaded claims but does not establish the amount of damages. Geddes, 559 F.2d at 560; see also Adriana Int'l Corp., 913 F.2d at 1414; Doe v. Rafael Saravia, 348 F.Supp.2d 1112, 1143 (E.D. Cal. 2004).  To obtain a default judgment against a defendant for

5

a claim for uncertain damages, the plaintiff must prove the amount of damages he seeks. Shanghai Automation Instrument Co., Ltd. v. KUEI, 194 F.Supp.2d 995, 1010 (N.D. Cal. 2001).

Discussion

Factor One

The first Eitel factor weighs in favor of a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff was unsuccessful in his attempt to press claims against defendant Dr. Naku. Despite being granted an extension of time to appear, Dr. Naku failed to appear, so plaintiff would be left without any other recourse against defendant should default not be entered. Accordingly, the first Eitel factor favors the entry of default judgment.

Factors Two and Three

The merits of plaintiff's substantive claim and the sufficiency of the operative pleading weigh heavily against granting default judgment, for the following reasons.

In the third amended complaint, plaintiff concedes that he does not challenge the specific treatment Dr. Naku provided for plaintiff's initial symptoms. (ECF No. 54 at 2.) Indeed, absent facts not alleged here, plaintiff could not successfully challenge Dr. Naku's treatment in 2005 because the medical records provided by plaintiff demonstrate that such treatment did not evidence deliberate indifference.[1] (ECF No. 54 at 26-28.)

Instead, plaintiff challenges Dr. Naku's medical care based on "the progression of [plaintiff's] symptoms into cancer." (ECF No. 54 at 2.) Plaintiff admits Dr. Naku ordered a PSA blood test but claims he "failed to obtain a urology test from February 2, 2006 to February 13, 2007." (ECF No. 54 at 3.) Plaintiff appears to claim that Dr. Naku's failure to refer plaintiff to a urologist in 2006 or 2007 led to the delay in plaintiff's prostate cancer diagnosis in 2013. The delay in treatment that causes harm or unnecessary and wanton infliction of pain can violate the

---

[1] On the few occasions defendant Dr. Naku treated plaintiff, Dr. Naku ran lab tests, including a PSA, and provided plaintiff with pain medication. (Id.) On February 2, 2006, plaintiff's PSA was 1.2. (ECF No. 54 at 32.) Initially, Dr. Naku diagnosed plaintiff with penile pain, cause unknown, reevaluate in seven days. (ECF No. 54 at 26.) Following various lab tests, on December 29, 2005, Dr. Naku diagnosed plaintiff with a thrombosed vein on penis, dorsal aspect, traumatic, and noted that if pain is not resolved, obtain urology consult. (ECF No. 54 at 28.) Plaintiff was to return in 7 days if pain not resolved. (Id.)

1    Eighth Amendment.  See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing
2    Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam));
3    Hudson v. McMillian, 503 U.S. 1, 10 (1992).  However, the issue is whether the delay was the
4    product of Dr. Naku's deliberate indifference to plaintiff's medical needs.  Farmer v. Brennan,
5    511 U.S. 825, 837, 847 (1994); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).
6    Assuming Dr. Naku misdiagnosed plaintiff's condition, and a resulting delay in the diagnosis and
7    treatment, "[m]ere negligence in diagnosing or treating a medical condition, without more, does
8    not violate a prisoner's Eighth Amendment rights."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th
9    Cir. 2004) (quoting McGuckin, 974 F.2d at 1059) (internal quotation marks omitted); Jackson, 90
10   F.3d at 332 (where alternative courses of treatment are available, plaintiff must show the course
11   of treatment chosen by the defendant was "medically unacceptable under the circumstances" and
12   "that [the defendant] chose this course in conscious disregard of an excessive risk to [the
13   plaintiff's] health"); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("mere
14   malpractice, or even gross negligence" is insufficient to establish an Eighth Amendment
15   violation).

16            The fact that Dr. Naku did not refer plaintiff to a urologist – now knowing in hindsight
17   that plaintiff was at some unknown point developing prostate cancer -- does not mean that by
18   2007 Dr. Naku had knowledge of a substantial risk of serious harm if Dr. Naku failed to refer
19   plaintiff to a urologist.  See, e.g., Hughes v. Chenail, 567 F. App'x 488, 488 (9th Cir. 2014)
20   (affirming grant of summary judgment for defendants and explaining "[a]t most, the evidence that
21   [plaintiff] presented demonstrates that the failure of [defendant doctors] to immediately refer
22   [plaintiff] to a liver specialist amounted to negligence."); Ross v. Ortiz, 2013 WL 3923487, at *12
23   (C.D. Cal. July 29, 2013), aff'd, 587 F. App'x 434 (9th Cir. 2014) (finding the denial of
24   immediate access to a specialist in a nonemergency situation does not amount to deliberate
25   indifference); Heidtke v. Corr. Corp. of Am., 489 F. App'x 275, 277, 280-81 (10th Cir. 2012)
26   (finding a doctor was not deliberately indifferent for failing to detect particularized injury because
27   he provided treatment consistent with symptoms and actively monitored inmate's condition).
28            Moreover, the treatment plaintiff received at CSP-SOL by other physicians suggests that if

plaintiff had prostate cancer in 2005 or even 2007, Dr. Naku was not deliberately indifferent for failing to diagnose it. The merits of plaintiff's substantive claims against Dr. Naku are undercut by the fact that other treating physicians also failed to refer plaintiff to a urologist or to diagnose his prostate cancer.

For example, in his allegations against defendant Chen, who treated plaintiff between October 15, 2007, and May 27, 2009, plaintiff claimed Dr. Chen delayed treating plaintiff by misdiagnosing plaintiff and by also failing to earlier send plaintiff to a urologist. (ECF No. 72 at 5, citing ECF No. 70 at 13; see also ECF No. 54 at 4-5.) But as noted, a misdiagnosis does not rise to the level of deliberate indifference, and at the time plaintiff saw Dr. Chen, plaintiff's PSA level was "in range" at 1.6 (ECF No. 54 at 102), which is higher than the PSA level at the time plaintiff was seen by Dr. Naku (1.2).

Similarly, plaintiff failed to set forth specific facts evidencing defendant Dr. Mahmoud's awareness of plaintiff's alleged "priority medical needs." (ECF No. 54 at 3-4; see also ECF No. 179 at 8.) Just as with Dr. Mahmoud, plaintiff's allegations as to Dr. Naku fail to demonstrate Dr. Naku's awareness of plaintiff's "'high risk' and priority medical condition." (ECF No. 54 at 3.)

The fact that plaintiff was diagnosed with prostate cancer many years after Dr. Naku treated plaintiff does not demonstrate that defendant Dr. Naku was deliberately indifferent to plaintiff's serious medical needs by failing to refer plaintiff to a urologist in 2007. Plaintiff's third amended complaint and the attached medical records demonstrate that plaintiff was provided medical treatment by many physicians, and other physicians who treated plaintiff at CSP-SOL did not determine that plaintiff required a referral to a urologist or diagnosed prostate cancer.[2] Such determinations diminish the substance of plaintiff's claims as to Dr. Naku.

Thus, factors two and three weigh heavily against granting default judgment.

Factor Four

In weighing the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct." PepsiCo, Inc., 238 F.Supp.2d at 1176-

---

[2] Both Dr. Chen and Dr. Mahmoud were previously dismissed from this action. (ECF Nos. 106, 185.)

77. This factor weighs against default judgment when a large sum of money is at stake. Eitel, 782 F. 2d. at 1472. Here, plaintiff seeks over $900,000.00 in damages. Such a high demand weighs against default judgment.

### Factor Five

At this stage of the proceedings, the undersigned does not anticipate the possibility of a dispute concerning material facts as to plaintiff's Eighth Amendment claim against Dr. Naku because Dr. Naku failed to appear and is the last defendant in this action. However, considering the findings as to factors two and three, the undersigned finds that factor five weighs against entry of default judgment.

### Factor Six

Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Here, it is unclear whether Dr. Naku's failure to appear was due to excusable neglect. His initial letter, although not verified, confirms his strong opinion that he provided plaintiff with appropriate medical care and was not deliberately indifferent to plaintiff's serious medical needs. Because the order directing Dr. Naku to file a responsive pleading was returned by the postal service, the nature of his subsequent failure to appear remains unclear. However, given that defendant Dr. Naku was properly served and obviously aware of this litigation, this factor weighs in favor of default judgment.

### Factor Seven

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. The undersigned recognizes that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also e.g., Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). However, given the fact-intensive nature of plaintiff's claim, the undersigned finds that the policy favoring merits-based decisions weighs in favor of denying default judgment.

////

Conclusion

Accordingly, the Eitel factors do not weigh in favor of entering default judgment against Dr. Naku.

Remedies

Allegations related to damages are not deemed true upon default. TeleVideo Sys., 826 F.2d at 917-18. The motion must support any requested relief, including costs, and prejudgment interest. See In re Ferrell, 539 F.3d 1186, 1192 (9th Cir. 2008) (noting party seeking costs must specify basis for such award); Schneider v. Cnty. of San Diego, 285 F.3d 784, 789 (9th Cir. 2002) ("Whether prejudgment interest is permitted in a particular case is a matter of statutory interpretation, federal common law, and, in some instances, state law."); Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Thus, a party seeking default judgment must prove their damages. Rubicon Global Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp., 226 F. Supp 3d 1141, 1148 (D. Or. 2016). "[D]istrict courts within the Ninth Circuit have required plaintiffs to prove . . . compensatory damages with 'reasonable certainty' even in situations of default." Id. at 1149.

Here, plaintiff provided no evidence to support the damages he seeks.

Dismissal of the Action

As noted above, Dr. Naku is the last defendant remaining in this action. Because the undersigned recommends that plaintiff's motion for default judgment be denied, dismissal of this action is appropriate. Plaintiff was granted multiple opportunities to amend his pleading, yet all other defendants have been dismissed. See Carnahan v. Seterus, Inc., 712 F. App'x 702, 704 (9th Cir. 2018) (affirming dismissal with prejudice "given [the plaintiff's] repeated failure to cure deficiencies by amendments previously allowed"); Miller v. Yokohama Tire Corp., 358 F.3d 616, 622 (9th Cir. 2004) (a court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended his complaint). Plaintiff's allegations demonstrate at most that defendants failed to timely diagnose plaintiff's prostate cancer which, while unfortunate, failed to rise to the level of deliberate indifference. Under the circumstances, it would be futile to grant plaintiff further leave to amend, and this action should be dismissed.

Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motions for default judgment (ECF Nos. 229, 230) be denied; and

2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 29, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/john1313.defj